**GULDAGER et al. v. UNITED STATES.**

No. 11633.

United States Court of Appeals
Sixth Circuit.

May 25, 1953.

Guy G. Bratton, Detroit, Mich. (Bratton & Bratton, Detroit, Mich., on the brief), for appellants.

Herman S. Greitzer, Washington, D. C. (Holmes Baldridge, Edward H. Hickey and Herman S. Greitzer, Washington, D. C., Philip A. Hart and John F. Noonan, Detroit, Mich., on the brief), for appellee.

Before SIMONS, Chief Judge, and ALLEN and MILLER, Circuit Judges.

SIMONS, Chief Judge.

The sole question presented by this appeal is whether Series "E" Government Bonds, registered in the co-ownership form to a husband or wife, are subject to levy in Michigan, for the debts of the husband. The District Court found that they are, in a proceeding by the United States for a declaratory judgment.

The United States is a judgment creditor of the appellants and subsequent to obtaining the judgment negotiations for settlement brought forth controversy as to whether execution could be levied upon Series "E" Bonds registered in the names of the appellants and their respective wives in co-ownership form under United States Treasury Department Circular No. 530 issued February 13, 1945, as amended 1949, 10 F.R. 1956. By agreement, a portion of the bonds were cashed and their proceeds amounting to $30,000 were placed in escrow, pending decision by the court. It was agreed that if the bonds are entirely exempt from process in aid of a judgment the funds shall be turned over to the defendants, the appellants, but that if such bonds are wholly, or in part, subject to process in aid of the judgment, the funds shall be turned over to the United States. The

bonds were all, or substantially all, bought with funds of the appellants and not with funds provided by their wives and were purchased prior to the commencement of the action in which judgment was obtained. The appellants contend that the bonds became entirety property under the laws of Michigan, constituted such property at the time of the judgment and are wholly exempt from execution to satisfy a judgment entered against the husbands alone.

The United States contends that the controversy is governed by §§ 315.4(a) (2), 315.13 and 315.14 of Treasury Department Circular 530, and that it has been the administrative practice of the Treasury to recognize the validity of levies on such bonds by judgment creditors. The appellants deny that the case is governed by the Treasury Regulations and assert that if the Treasury recognizes the validity of such levies, its administrative practices are illegal under the laws of Michigan and of the United States.

Series "E" Bonds are issued by authority of Title 31 U.S.C.A. § 757c(a) which provides they shall be issued "in such manner and subject to such terms and conditions * * * as the Secretary of the Treasury may from time to time prescribe." Under this authority, the Treasury Department issued its Circular 530 and subsequently its Sixth Revision dated February 13, 1945, embodying its regulations. Under established rules, they became part of the contract. The authorized forms of registration are enumerated in § 315.4 and the authorized form applicable to the bonds here involved is described in subsection (a) (2) as follows: "Two-Person Co-Ownership Form: In the names of two (but not more than two) persons in the alternative as co-owners, for example: 'John A. Jones or Mrs. Ella S. Jones.' No other form of registration establishing co-ownership is authorized." Section 315.13 provides that a claim against an owner or co-owner will be recognized when established by valid judicial proceedings and payment or reissue will be made upon presentation and surrender of the bond, except that no proceedings will be recognized that give effect to an attempted voluntary transfer inter

vivos or impair the rights of survivorship conferred by the regulations upon a surviving co-owner or beneficiary. Judgment creditors will have the right to payment (but not to reissue) and if a debtor is not the sole owner of the bonds, payment will be made only to the extent of his interest therein, which must be determined by the court, or otherwise validly esablished. The escrow agreement relieves us of need for considering the extent of appellants' interest in the bonds if less than total.

Since the appellants assert immunity to process by way of execution under both Michigan and federal law, we consider first the inescapable incidence of an estate by the entireties in Michigan. There, the common law rule is unchanged by statute and a conveyance to husband and wife without more conveys such estate but may create one in joint tenancy or in common, if explicitly so stated in the deed. The tenancy by the entireties is a joint tenancy modified by the theory of the common law that husband and wife are one person, Hoyt v. Winstanley, 221 Mich., 515, 518, 191 N. W. 213. As stated in Tiffany Real Property, abridged edition 1940 § 290: "While a conveyance or devise to a husband and wife ordinarily creates a tenancy by entireties, an intention clearly expressed that they shall take as tenants in common, or as joint tenants, is effective." It appears that mere nomenclature is not the sole controlling factor in determining the character of an estate, Hoyt v. Winstanley, supra. The most important incident of an estate by the entireties is that the survivor, whether husband or wife, is entitled to the whole and that this right cannot be defeated by a conveyance by the other tenant to a stranger, Tiffany, § 291.

Formerly, there was no estate by entirety in personal property, in Michigan. However, by Act 212 of the Public Laws of 1927, it was provided that "All bonds * * * payable to persons who are husband and wife * * * shall be held by such husband and wife in joint tenancy unless otherwise therein expressly provided, in the same manner and subject to the same restrictions, consequences and conditions as are incident to the ownership of real es-

tate held jointly by husband and wife * * *." It is said by Judge Moore in his treatise on "Michigan Community Property" (1948), West Pub. Co., in reference to this statute: "It is still an open question, at least from the standpoint of the rights of creditors, as to whether this statute created an entirety interest in personalty, or merely a joint tenancy with right of survivorship."

The incidence of the bonds here in question, as governed by the regulations in respect to their issue, is that while there is preserved the right of survivorship, that right is preserved only when co-ownership is not otherwise terminated under circumstances recognized by the regulations. The present bonds within certain limitations may be reached by creditors for the debts of a co-owner. They may be presented for redemption by either of the co-owners. When subjected to process by creditors, there is recognition of the extent of interest therein of each of the respective co-owners. These provisions negate the creation of an estate by the entireties, for the unity of interest is not preserved. Finally, it must be noted that the bonds are registered in the names of two persons in the alternative as co-owners, and that no other form of registration establishing co-ownership is authorized. This is not in an environment where "or" may be read as "and", since "or" specifically denotes alternative and not joint co-owners, registration is limited to that form and is consistent with the other incidents herein recited. The bonds do not create an estate by the entireties, under Michigan law.

Even were we to assume that the bonds could be so interpreted as to create an estate by the entireties, in respect to private issues, the appellants still must fail. Under the provisions of the Constitution, Congress has the power to borrow money on the credit of the United States and to make all laws which shall be necessary and proper for carrying this power into execution, Art. 1, Section VIII. The bonds involved are bonds of the federal government. The estate by them created is not an estate that comes into existence under the laws of Michigan but is created by federal contract and subject to federal law. As said in Harvey v. Rackliffe, 141 Me. 169, 41 A.2d 455, 161 A.L.R. 296, cited and quoted with approval in Parkinson v. Wood, 320 Mich. 143, 148, 30 N.W.2d 813, 814 "The capacity of the Federal government to borrow money depends on the inviolability of its obligation, on its ability to carry it out strictly in accordance with its terms. * * * Because of the supremacy of Federal law a state rule has no application to this contract." See also United States v. Dauphin Deposit Trust Company, D.C., 50 F.Supp. 73.

The community property cases, such as Poe v. Seaborn, 282 U.S. 101, 51 S.Ct. 58, 75 L.Ed. 239, and its companion cases, Goodell v. Koch, 282 U.S. 118, 51 S.Ct. 62, 75 L.Ed. 247; Hopkins v. Bacon, 282 U.S. 122, 51 S.Ct. 62, 75 L.Ed. 249; and Bender v. Pfaff, 282 U.S. 127, 51 S.Ct. 64, 75 L.Ed. 252, are not apposite. There, the court was called upon to determine the tax liability of co-owners of an estate created by state law. Here, we are concerned with an estate that came into being by an instrument of the government which recognizes claims of creditors as to separable interests of co-owners.

The doctrine of Clearfield Trust Company v. United States, 318 U.S. 363, 367, 63 S.Ct. 573, 575, 87 L.Ed. 838, is pertinent: "In our choice of the applicable federal rule we have occasionally selected state law. * * * But reasons which may make state law at times the appropriate federal rule are singularly inappropriate here."

The judgment below is

Affirmed.